United States District Court
Southern District of Texas

**ENTERED**

April 16, 2026

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| HASHIM MOHAMED OSMAN[1], | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:26-CV-222 |
| | § | |
| TODD BLANCHE, ET AL.,[2] | § | |
| | § | |
| Respondents. | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's pro se Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, (Dkt. No. 2), and Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, (Dkt. No. 10). The petition alleges that Petitioner's detention in federal immigration custody is unconstitutional. The primary issue before the Court is whether there is a significant likelihood that Petitioner's removal from the United States will occur in the reasonably foreseeable future. For the reasons discussed below, the motion to dismiss will be converted to a motion for summary judgment and it is denied. The petition is granted.

### I. BACKGROUND

Petitioner is a citizen of Sudan. (Dkt. No. 17 at 1).[3] He is currently detained in federal immigration custody. (*Id.*). He has been detained since he entered the United States on July 19, 2024. (*Id.*). After he entered, he was apprehended and processed for expedited removal. (Dkt. No. 10-1 at 2). He was ordered removed, and his order of

---

[1] Petitioner is referred to as Osman Omer Hashim-Mohamed in Respondents' exhibits. (Dkt. Nos. 10-1, 10-2). However, Petitioner refers to himself as Hashim Mohamed Osman in his filings. (Dkt. Nos. 1, 17). The Court will maintain the style of the case as set forth in the Petition.

[2] Todd Blanche is automatically substituted for Pamela Bondi in this case under Federal Rule of Civil Procedure 25(d). Markwayne Mullin is automatically substituted for Kristi Noem in this case under the same rule. The Clerk of Court is **DIRECTED** to substitute these parties on the docket sheet.

[3] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

removal became final on April 4, 2025, because both parties waived appeal. (*Id.*; Dkt. No. 17 at 1).

On February 13, 2026, Petitioner filed the instant pro se petition seeking review of the constitutionality of his detention, alleging that he cannot be removed to Sudan because of the ongoing war. (Dkt. No. 2). He asserts that his detention violates his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

Respondents move to dismiss and attach evidence to their motion, including a declaration from a deportation officer, the agency's internal decision to continue Petitioner's detention, and various documents from Petitioner's removal proceedings. (Dkt Nos. 10-1, 10-2). Because Respondents attached evidence to the motion, the Court notified the parties that it would construe the motion as a motion for summary judgment instead, under Federal Rule of Civil Procedure 12(d). (Dkt. No. 11).[4] In order to give the parties a reasonable opportunity to present relevant material, the Court ordered Petitioner to file a response to the motion and permitted Respondents to file a reply. (*Id.*). Petitioner filed a response, (Dkt. No. 17), and Respondents did not reply.

The evidence submitted by the parties provides additional facts. According to Deportation Officer Robert Taylor, Jr.'s unsworn declaration, Immigration and Customs Enforcement's (ICE) Enforcement and Removal Operations' (ERO) San Antonio Field Office submitted a travel document request to Sudan's consulate on April 25, 2025, requesting travel documents for Petitioner's removal. (Dkt. No. 10-1 at 2).[5] On May 6,

---

[4] As explained in the Court's prior Order, (Dkt. No. 11), the Federal Rules of Civil Procedure (FRCP) may apply in habeas corpus proceedings. Rules Governing Section 2254 Cases 1(b), 12 (applying Section 2254 Rules to other habeas corpus petitions and then applying the FRCP to these rules). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). As a general rule, when considering motions to dismiss made pursuant to Rule 12(b)(6), a Court may not consider matters outside of the pleadings. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). Instead, the Court must look only to the pleadings and must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Zastrow v. Hou. Auto Imports Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015). If, however, matters outside of the pleadings are presented to the Court in a motion to dismiss, and the Court considers the extrinsic matters, the motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *see also Grynberg v. BP P.L.C.*, 855 F. Supp. 2d 625, 647–48 (S.D. Tex. 2012). Rule 12(d) requires that the parties "be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

[5] Respondents' attached declaration fails to meet the legal standard set forth in 28 U.S.C. § 1746 because the declaration does not state that the information is "true and correct." The Court has identified this issue in several orders with the same respondents, yet Respondents continue to offer incompetent evidence to substantiate their position. *See, e.g.*, *Vargas Istamo v. Perez*, No. 5:25-CV-186, slip op. at 2 (S.D. Tex. Dec. 19, 2025).

2025, "the International Operations Division (IAO) Headquarters notified ERO San Antonio that all flights to Sudan are cancelled due to closing of the airport resulting from civil unrest." (*Id.*). On May 20, 2025, the consulate of Sudan issued a travel document for Petitioner. (*Id.*). On February 18, 2026—nearly nine months later and a week after Petitioner filed his petition—the agency reviewed Petitioner's file and determined that Petitioner could be removed without delay. (*Id.*). The declaration avers that because "there are no known impediments to executing Petitioner's removal order to Sudan, . . . [r]emoval to Sudan is, therefore, significantly likely in the reasonably foreseeable future." (*Id.*).

Respondents also attach to the motion various documents related to Petitioner's ongoing detention. (Dkt. No. 10-2). The first document is a letter to Petitioner explaining ICE's internal decision to continue his detention following his 90-day Post Order Custody Review (POCR). (*Id.* at 1). The letter reflects the procedure conducted under federal regulations, which consists of an internal review of Petitioner's case file. *See* 8 C.F.R. § 241.4(e), (f), (g). The letter states that "ICE has determined to maintain [Petitioner's] custody because: [Petitioner has] not demonstrated that, if released, [Petitioner] will not: [p]ose a significant risk of flight pending your removal from the United States, [or] [p]ose a threat to public safety based on criminal history." (Dkt. No. 10-2 at 1). The letter is signed by a Deputy ICE Field Office Director, and it is dated July 25, 2025. (*Id.* at 3). Respondents also attach Petitioner's order of removal and his Notice to Appear. (*Id.* at 4, 6, 10).

Petitioner provides a sworn declaration in response to the motion for summary judgment. (Dkt. No. 17). Petitioner asserts that there is an ongoing war in Sudan that prevents his removal. (*Id.* at 1). He describes the war in Sudan as a conflict between Sudan Armed Forces and Rapid Support Forces (RSF) to take control of the country. (*Id.*). He states that twelve million people have been displaced and over 150,000 people have died. (*Id.*). He also asserts that there is a lack of medical care and food and high rates of sexual harassment and torture. (*Id.*). He states that he has been attacked before because he refused to join one of the armed groups. (*Id.*). He also claims that RSF recruits children to fight for them and kill people who refuse to help them, and that the government cannot control RSF or protect people in Sudan. (*Id.* at 2).

Petitioner further states that the war has been ongoing since April 2023, and there is no president in Sudan that can take action because of the ongoing war. (*Id.*). He alleges that no airports are open to the public in Sudan as they are under attack. (*Id.*). To his knowledge, Sudanese nationals have not been deported to Sudan since the war began. (*Id.*). He further claims that these facts show that there is uncertainty in his country and that the United Nations says that there is no chance of the war ending in the near future. (*Id.*).

Petitioner agrees that he was issued travel documents, but he emphasizes that it has been ten months since the travel documents were issued without his removal. (*Id.* at 3). He argues that there is no way that he can be removed because of the closed airports and ongoing war, and he argues that his detention is indefinite. He asserts that, since he has been detained, he has cooperated with ICE and has not prevented his removal. (*Id.*). He requests immediate release.

## II. LEGAL STANDARDS

### A. Pro Se Litigants

Pro se litigants' pleadings are construed liberally and held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *Accord Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013); *Butler v. Porter*, 999 F.3d 287, 292 (5th Cir. 2021). However, even pro se litigants "must still brief the issues and reasonably comply" with the relevant rules of civil procedure. *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)); *see Coleman v. Lincoln Parish Det. Ctr.*, 858 F.3d 307, 309 n.10 (5th Cir. 2017) (citing *United States v. Jenkins*, 780 F.2d 518, 520 (5th Cir. 1986)).

### B. Motion to Dismiss

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citation modified). "[F]acial plausibility" exists "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This does not require detailed factual allegations but does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "accept as true all well-pleaded facts." *Rosenblatt v. United Way of Greater Hou.*, 607 F.3d 413, 417 (5th Cir. 2010). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### C. Motion for Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must consider the record as a whole to determine whether a genuine dispute exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, the Court must view the facts in the light most favorable to the nonmoving party. *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019). Once a party has properly moved for summary judgment under Rule 56, the non-movant must demonstrate which "specific facts" show that there is a genuine dispute. *Celotex*, 477 U.S. at 324. A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the Court must construe all facts and draw all inferences in the light most favorable to the non-movant. *Id.* at 255. However, the presence of a mere scintilla of evidence is not sufficient to overcome a motion for summary judgment. *Id.* at 252.

### D. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes

challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

### III. DISCUSSION

As a threshold matter, the Court converts Respondents' motion to dismiss to a motion for summary judgment. As explained *supra* in footnote four, the Court considers the evidence attached to Respondents' motion and therefore considers the motion as a motion for summary judgment.

Turning to Petitioner's claims, first, the Court will examine its jurisdiction to hear these claims. Second, the Court will analyze Petitioner's detention and likelihood of removability in the reasonably foreseeable future under *Zadvydas*. Ultimately, the Court will deny the motion for summary judgment, grant the petition, and order Petitioner's release after finding that he is indefinitely detained.

#### A. The Court Has Jurisdiction to Hear These Claims

In their motion, Respondents list Federal Rule of Civil Procedure 12(b)(1) as a basis for dismissal. However, Respondents make no argument nor cite authority to argue that the Court lacks jurisdiction.

In any event, the Court will evaluate its jurisdiction to hear Petitioner's claim. The Court does have jurisdiction to hear indefinite-detention claims because "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688; *see also Vargas Istamo v. Perez*, No. 5:25-CV-186, slip op. at 6 (S.D. Tex. Dec. 19, 2025). For this reason, the Court finds that it has jurisdiction to consider Petitioner post-removal-period detention claim.

#### B. Petitioner's Detention Is Indefinite[6]

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Zadvydas v. Davis*, the Supreme Court held that the

---

[6] The Court has previously ruled on similar indefinite detention claims and applies the same *Zadvydas* framework here. *Vargas Istamo*, No. 5:25-cv-186, slip op. (Dec. 19, 2025); *Chang v. Perez*, No. 5:25-cv-294, slip op. (S.D. Tex. Feb. 11, 2026).

INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. at 699. As the Court explained, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

In *Zadvydas*, the Supreme Court explained that "[w]hen an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." 533 U.S. at 682. Inadmissible noncitizens or those with certain criminal convictions may be detained beyond the removal period, 8 U.S.C. § 1231(a)(6), but the Court held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States," and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

The Court established a "6-month presumption" of reasonableness following the issuance of a removal order. *Id.* at 701. After the six-month period of "presumptively reasonable" detention ends, a petitioner seeking release from detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *see also Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006) (denying a *Zadvydas* claim where petitioner offers "nothing beyond conclusory statements"). Once a petitioner meets their burden, the burden shifts to the respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, Petitioner's post-removal-order detention began, for purposes of the *Zadvydas* analysis, on April 4, 2025, when his order of removal became final. (Dkt. No. 10-1 at 2; Dkt. No. 10-2 at 9; Dkt. No. 17 at 1). Accordingly, Petitioner has now been detained after a final order of removal for over one year. Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* has ended. Respondents argue that Petitioner's removal has been lawfully extended because "ICE determined that he was a flight risk." (Dkt. No. 10 at 6). Respondents cite Petitioner's 90-day POCR as

justification for the extended detention because "Petitioner did not demonstrate that if he was released, he will not pose a significant risk of flight pending removal from the United States and pose a threat to public safety." (*Id.*). They assert that this finding authorizes the extended detention of Petitioner under 8 U.S.C. Section 1231(a)(6). (*Id.* at 6–7 (citing Dkt. No. 10-2 at 1)).

Section 1231(a)(6) states that "an alien . . . who has been determined by [DHS] to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Respondents rely on ICE's decision as a result of the 90-day POCR to prove that Petitioner is a "risk to the community or unlikely to comply with the order of removal," by being a flight risk. However, Respondents position overextends the weight of ICE's unilateral determination following the 90-day POCR. ICE only determined that Petitioner had not proven that he was not a flight risk or a threat to public safety. Respondents do not offer additional reasons or specific fact-based determinations that explain why Petitioner would be a flight risk.

The Court finds that the result of the 90-day POCR does not justify an extension of Petitioner's detention, and certainly not to the extent that Petitioner's detention has been extended beyond the 90-day removal period, which ended over nine months ago.[7] Furthermore, any extension of the removal period is still subject to the Fifth Amendment Due Process Clause and the test set out in *Zadvydas*. *Zadvydas*, 533 U.S. at 697 (explaining that Respondents do not have "unlimited" discretion under Section 1231(a)). Even if the 90-day POCR was sufficient to extend the removal period, the *Zadvydas* framework still governs Petitioner's detention.

Because Petitioner's detention must still conform with due process, the standard *Zadvydas* analysis applies. Petitioner must next show there is "good reason to believe

---

[7] Other district courts have similarly found that the result of the 90-day POCR is insufficient to extend the removal period, and the *Zadvydas* analysis is still the applicable framework. *See Shengelia v. Ortega*, No. 5:25-CV-1545, 2025 WL 3654368, at *5 (W.D. Tex. Dec. 16, 2025) ("[T]he conclusory . . . POCR determination regarding Petitioner's failure to adequately show that he is not a flight risk or a danger to the community is insufficient to justify further detention."); *see also Leksina v. Rice*, No. 6:25-CV-1767, 2026 WL 655563, at *3 (W.D. La. Jan. 23, 2026), *R. & R. adopted*, 2026 WL 642195 (W.D. La. Mar. 6, 2026) (finding that "the Government's argument that [the petitioner's] continued detention is justified by finding her to be a flight risk is weak, . . . [and] generally, 'dangerousness' and 'flight risk' are not part of the *Zadvydas* analysis"). The Court finds these decisions persuasive.

that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

### 1. Petitioner Meets His Burden

Petitioner has shown good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. First, Petitioner provides facts describing civil unrest in Sudan that has prevented travel to and from the country, including descriptions on ongoing humanitarian issues. Second, he highlights that over ten months have passed since he was issued travel documents, and Respondents have failed to execute his removal in that time. Third, Petitioner does not have legal residence in any alternative countries, nor have Respondents provided notice of removal to any additional countries.

Respondents argue that Petitioner has failed to meet his burden because he provides no good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future and his allegations are conclusory. In the Fifth Circuit, a petitioner must show more than conclusory statements to establish good reason. *Andrade*, 459 F.3d at 543–44. Other district courts provide helpful persuasive authority in considering whether a petitioner meets this burden. For example, in *Trejo v. Warden of ERO El Paso East Montana*, the court found that Trejo met his burden by alleging that he received deferral of removal to El Salvador, his only country of citizenship, and "that ICE has not identified a third country that will accept him." No. 25-CV-401, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025). In another case, *Baltodano v. Bondi*, the petitioner met his burden by showing that he had been granted deferral of removal to Nicaragua, that he had no ties to any other country, and that travel documents had not been secured for any third country. No. CV-25-1958, 2025 WL 3484769, at *4 (W.D. Wash. Dec. 4, 2025). Other courts have found that the expiration of the presumptively reasonable six-month period is enough to meet the burden. *Iakubov v. Figueroa*, No. CV-25-3187, 2025 WL 2640218, at *2 (D. Ariz. Sep. 15, 2025); *Pham v. Bondi*, No. 2:25-CV-1835, 2025 WL 3122884, at *1 (W.D. Wash. Nov. 7, 2025).

Here, the Court finds that Petitioner presents sufficient evidence to meet the burden. While Petitioner has not been granted protection from removal to Sudan, he explains ongoing civil unrest that makes his removal impractical. And while Petitioner

9 / 13

has been issued travel documents, those travel documents were issued in May 2025—over eleven months ago—without being used to execute his removal. Other district courts have found that a petitioner establishes good reason under nearly identical facts. *See, e.g.*, *Mohammed v. U.S. Immigr. & Customs*, No. 25-CV-1069, 2026 WL 788065, at *1 (W.D. La. Mar. 5, 2026), *R. & R. adopted*, 2026 WL 785552 (S.D. Tex. Mar. 19, 2026) (finding petitioner's allegations that "removal is not reasonably foreseeable due to an ongoing crisis in Sudan" sufficient despite the fact that "travel documents were issued to Sudan in March 2025"). Each of these facts supports Petitioner's assertion—and goes beyond conclusory statements—that he has good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and he has met his burden to establish good reason.

### 2. Respondents Fail to Meet Their Burden

Because Petitioner has shown good reason, the burden then shifts to Respondents to provide evidence sufficient to rebut the showing. First, the Court notes that the sworn statement of Officer Taylor is defective. It fails to meet the legal standard set forth in 28 U.S.C. § 1746 because the declaration does not state that the information is "true and correct." § 1746(2). The Court has previously pointed out this defect in the form of the sworn statements provided on behalf of the federal Respondents. *Vargas Istamo*, No. 5:25-cv-186, slip op. at 2 (Dec. 19, 2025); *Chang*, No. 5:25-cv-294, slip op. at 2 (Feb. 11, 2026); *Malak v. Bradford*, No. 5:26-cv-9, slip op. at 2 (S.D. Tex. Mar. 16, 2026). At this point, the Court is compelled to conclude that the failure to submit a properly sworn statement is intentional, and the Court will not consider it as evidence in support of Respondents' position. Regardless, even if the Court were to consider the information set forth in the statement of Officer Taylor, Respondents would fail to meet their burden.

The declaration puts forth that "[t]here are no known impediments to executing Petitioner's removal order to Sudan. Removal to Sudan is, therefore, significantly likely in the reasonably foreseeable future." (Dkt. No. 10-1 at 2). Additionally, the declaration states that Petitioner was issued travel documents on May 20, 2025. (*Id.*). Statements in the declaration are also conclusory and unsupported by additional facts. For example, the officer states that, in May 2025, "all flights to Sudan [were] cancelled due to closing of the airport resulting from civil unrest." (*Id.*). Yet, in February 2026, the agency

10 / 13

"reviewed Petitioner's file and determined that Petitioner may be removed without delay, as removal of Sudanese nationals could proceed." (*Id*.). There is no explanation of whether the civil unrest has resolved, whether airports are open, or if additional facts indicate that Petitioner could possibly be removed to Sudan.

The evidence presented by Respondents fails to rebut Petitioner's good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. To rebut a showing of good reason, Respondents must "respond with evidence sufficient to rebut [a petitioner's] showing." *Zadvydas*, 533 U.S. at 701. In *Mohammed*, a factually similar case, the respondents failed to meet their burden when the supporting evidence "mention[ed] no ongoing efforts at removal. In fact, the declaration show[ed] a lack of any action to effectuate removal for over eight months." *Mohammed*, No. 25-CV-1069, 2026 WL 788065, at *2. The Court finds the reasoning in *Mohammed* persuasive.

Here, Petitioner's post-removal-order detention has lasted over a year. He has not been removed to Sudan, despite Respondents' receipt of travel documents in May of last year. Petitioner provides an explanation for the delay—ongoing civil unrest that prevents travel to and from Sudan. These facts, in combination with the extensive length of time that Petitioner has been detained since his order of removal became final, indicate the removal is not significantly likely to occur in the reasonably foreseeable future. While Respondents contend that ICE confirmed that Petitioner could be removed without delay, this is a conclusory assertion, and the Court finds that these minimal efforts and the evidence presented by Respondents do not rebut Petitioner's showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

### 3. Respondents Are Not Entitled to Judgment as a Matter of Law

As the movants in a motion for summary judgment, Respondents carry the burden to establish that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. Based on the Court's analysis of the reasonableness of Petitioner's detention set forth above, Respondents are not entitled to judgment as a matter of law. Because Respondents have not rebutted the showing of good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the motion for summary judgment is denied.

11 / 13

*4. Petitioner Is Entitled to Release*

The Court finds that Petitioner's continued detention violates due process because there is no significant likelihood of removal in the reasonably foreseeable future. For that reason, the Court determines that he is entitled to relief on the indefinite detention claim in his petition. Because the Court finds that there is no significant likelihood of removal in the reasonably foreseeable future, Petitioner must be released. *Zadvydas*, 533 U.S. 701 (holding that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"). The Court orders his release as set forth below.

## IV. CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, (Dkt. No. 10), is **DENIED**. Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241, (Dkt. No. 2), is **GRANTED**.

The Court **ORDERS** Respondents to release Petitioner **by April 20, 2026, at 5:00 p.m.** Petitioner should be released in a public place during daytime hours. At the time of his release from custody, Respondents must return to Petitioner any and all identification documents taken from him at the time of his apprehension or during his detention. Additionally, upon his release, Respondents must provide Petitioner with a printed copy of this Order granting his habeas petition and ordering his release from custody.

No later than **April 20, 2026, at 5:00 p.m.,** the parties shall provide the Court with a status update concerning Petitioner's release. The parties should also notify the Court of the conditions, if any, of his release.

The Court **ORDERS** that Petitioner cannot be re-detained without a hearing before this Court to determine whether there has been a material change in circumstances; and he may only be subject to detention if there is a material change in circumstances.

It is so **ORDERED**.

**SIGNED** on April 16, 2026.

_____

John A. Kazen
United States District Judge